UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD PITTMAN,

    Plaintiff,                                      Case No. 14-13591
                                                  Honorable Victoria A. Roberts

v.

EXPERIAN INFORMATION
SOLUTIONS, INC., et al.,

    Defendants.
_____/

**ORDER: (1) GRANTING DEFENDANT BSI'S MOTION FOR SUMMARY JUDGMENT [Doc. 100]; (2) DEEMING MOOT BSI'S MOTION *IN LIMINE* [Doc. 99]; AND (3) DISMISSING THE CASE**

**I.    INTRODUCTION AND BACKGROUND**

Howard Pittman ("Pittman") filed this case against several parties, including Servis One, Inc. d/b/a BSI Financial Services ("BSI") and iServe Servicing, Inc. ("iServe"). The case relates to (1) Pittman's mortgage loan, which iServe serviced until June 2012 when it transferred servicing obligations to BSI; (2) a trial modification plan ("TMP") from January 2012 to March 2012; and (3) a permanent loan modification, which was executed in September 2016, but made retroactive to March 2012. BSI is the sole remaining defendant.

Pittman alleges three claims against BSI: (1) negligent violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*; (2) willful violation of the FCRA; and (3) breach of contract. Pittman says BSI violated the FCRA by incorrectly reporting to credit reporting agencies ("CRAs") that his account was past due between September

2012 and July 2014; he says BSI breached the mortgage agreement by failing to pay property taxes on his property in 2013 and 2014.

Pittman and iServe previously filed cross motions for summary judgment. iServe moved for summary judgment on Pittman's two FCRA claims against it; Pittman moved for summary judgment on his two claims against iServe as well as on all three claims against BSI.

In an order dated November 30, 2016, the Court (1) denied Pittman's entire motion; (2) granted iServe's motion and dismissed it from the case; and (3) found, in relevant part, that:

a) Under the original mortgage agreement, Pittman was required to make monthly payments of $1980.42;

b) After Pittman failed to make mortgage payments in August and September 2011, iServe granted him a TMP on his mortgage, temporarily reducing his monthly payment to $1,357.80 for January, February and March 2012;

c) The TMP explicitly states that it is not permanent and that Pittman's credit may be adversely affected by accepting its terms;

d) Pittman timely made the three trial payments and continued to make payments for $1,357.80 each month to iServe. However, the TMP was never made permanent in writing by iServe;

e) After the loan was assigned to BSI, Pittman continued to make the trial period payments of $1,357.80;

f) Because the TMP was temporary, and because Pittman was on notice that his credit score could be adversely affected by accepting the TMP, Pittman cannot show iServe or BSI made an error in reporting his loan payments as overdue.

[Doc. 96, PgID 2373-74, 2377, 2380 (minor alterations throughout)].

In addition to stating that Pittman's credit score may be adversely affected by accepting its terms, the TMP also stated that: (1) "Your existing loan and loan

2

requirements remain in effect and unchanged during the trial period"; (2) "acceptance and posting of your new payment during the trial period . . . shall not constitute a cure of your default under your loan unless such payments are sufficient to completely cure your entire default under your loan"; and (3) "Once you make all of your trial period payments on time, we will send you a modification agreement detailing the terms of the modified loan." [Doc. 90-1].

BSI did not file a timely dispositive motion. However, the Court granted BSI's request to file an untimely motion for summary judgment based on the findings in the November 30 order. That motion is now before the Court.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary Judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). The moving party has the initial burden to demonstrate the basis for its motion and identify portions of the record that show an absence of a genuine issue of fact. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F. 3d 845, 848 (6th Cir. 2002). Once that burden is met, the non-moving party must set forth specific facts that present a "genuine issue for trial." *Id*. The existence of a mere scintilla of evidence to support a plaintiff's position will not suffice; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Parties must support assertions of fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

3

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

### B. Pittman's FCRA Claims Fail

To succeed on an FCRA claim, a consumer must show, among other things, that the defendant made a reporting error. *See Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996) (affirming the dismissal of a plaintiff's FCRA claims on summary judgment because the plaintiff could not prove information provided by CRAs was inaccurate).

The Court previously found that "Pittman cannot show iServe or BSI made an error in reporting his loan payments as overdue." For that reason, among others, BSI says it is entitled to summary judgment on Pittman's FCRA claims. The Court agrees.

Pittman defaulted on his loan when he failed to make a mortgage payment in August and September 2011. In addition, the TMP explicitly provided that the acceptance of trial period payments does not cure previous defaults, and the original terms of the loan were still in effect and would remain in effect unless and until a permanent loan modification was executed. Therefore, even when Pittman was making the trial payments of $1,357.80, the loan was still deficient based on the missed payments and based on the trial period payment being less than the amount due under the original terms of the loan (i.e., $1980.42). Because the loan remained overdue, the TMP expressly notified Pittman that his credit may be adversely affected.

As the Court previously found, Pittman cannot show that BSI made a reporting error because his loan remained past due. Therefore, under the law of the case doctrine, Pittman's FCRA claims fail as a matter of law. *See Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004) (Under the law of the case doctrine, findings made at one

4

point in a case "continue to govern the same issues in subsequent stages in the same case").

Pittman says the Court should find otherwise based on the permanent loan modification he and BSI executed in September 2016, which is retroactive to March 2012. Pittman fails to identify any authority supporting this argument; for that reason alone, the argument fails. More importantly, however, it fails on the merits. At the time BSI reported that Pittman's loan was past due, it *was* past due. Therefore its reports were accurate, and not in violation of the FCRA.

Pittman also points to a March 2013 email from BSI to Pittman's attorney stating, "Have [Pittman] . . . continue [making] the trial payment amount. I will try to get the mod[ified] payment as close as I can to that." Based on this email, he argues that: (1) "BSI's reporting of [his] account as delinquent, without indicating that [he] continued to pay BSI the trial payment amount during that time period as directed by BSI, renders its reporting inaccurate under 12 C.F.R. § 1022.41(a)"; and (2) BSI should be equitably estopped from claiming that his account was delinquent because the email caused him to believe that the trial payment amount completely satisfied his monthly payment obligation. Neither argument has merit.

Besides quoting the statute, Pittman fails to provide support for his conclusory assertion that BSI's failure to indicate that he continued to make the trial payment amount renders its reporting inaccurate. Contrary to Pittman's unsupported argument, BSI's failure to indicate that he continued making the trial payment amount did not violate the FCRA.

The TMP explicitly provides that the acceptance of trial period payments did not cure Pittman's default and that the original terms of the loan remained in effect until the parties executed a permanent loan modification. It is clear from the email that no loan modification had been executed; the emails between BSI and Pittman's counsel leading up to the above-quoted email show that the parties were attempting to finalize the terms of a permanent loan modification, but had not yet executed an agreement. Therefore, the loan remained past due based on Pittman's failure to make payments in August and September 2011 and his failure to pay the full monthly payment amount under the loan. Accordingly, BSI's reports that Pittman's loan was past due were accurate, and did not violate the FCRA.

Pittman's equitable estoppel argument also fails. As a procedural matter, Pittman's equitable estoppel argument fails because he supports it with conclusory and unverified statements, rather than admissible evidence from the record. Under Rule 56(c), Pittman's conclusory and unsupported assertions cannot establish a genuine issue of material fact, and they are insufficient to withstand summary judgment. Fed. R. Civ. P. 56(c)(1). Notwithstanding these procedural deficiencies, Pittman's equitable estoppel argument fails as a matter of law.

"Under Michigan law: 'Equitable estoppel arises where one party has knowingly concealed or falsely represented a material fact, while inducing another's reasonable reliance on that misapprehension, under circumstances where the relying party would suffer prejudice if the representing or concealing party were subsequently to assume a contrary position.'" *Price v. Annuity Investors Life Ins. Co.*, 244 Fed. Appx. 654, 658 (6th Cir. 2007) (quoting *Adams v. City of Detroit*, 232 Mich. App. 701, 708 (1998)). *See*

6

*also Atkinson v. Atkinson*, 160 Mich. App. 601, 607 (1987) ("Equitable estoppel arises when one causes another, by acts, representations, or silence, intentionally or through culpable neglect, to believe in the existence of some material fact and to detrimentally rely on the existence of such fact.").

Based on the clear language of the TMP and second sentence in the email (i.e., "I will try to get the mod[ified] payment as close as I can to [the trial payment amount]."), BSI's email could not have *reasonably* caused Pittman to believe the trial payment amount satisfied his monthly payment obligation. Because the email clearly indicates that BSI was still trying to finalize the terms and payment amount for a permanent modification, such that no modification had been executed, it would be unreasonable for Pittman to believe the email permanently modified *only* his monthly payment amount. This is especially true when considering the TMP provides that: (1) the original terms of the loan remained in effect unless and until a permanent modification was executed; and (2) "Once you make all of your trial period payments on time, we will send you a modification agreement *detailing the **terms** of the modified loan*" [Doc. 90-1 (emphasis added)]. In addition, even if the email did modify his monthly payment obligation, the Court would not estop BSI from claiming Pittman's account was delinquent, because his loan remained past due based on the missed payments in August and September 2011.

Moreover, any reliance was not detrimental to Pittman. The loan was still in default based on Pittman's failure to make the August and September 2011 monthly payments; therefore, BSI reporting that the loan was overdue was accurate without even considering the fact that Pittman's payments were lower than the amount due under the original terms of the loan. In addition, Pittman fails to show that he could

7

have made the full payment amount. After the TMP ended in March 2012, Pittman continued making the $1,357.80 trial period payment rather than the $1980.42 amount due under the loan. Notably, Pittman does not explain why he continued to make the lower trial payment amount after the TMP ended but before he received BSI's March 2013 email.

Pittman's equitable estoppel argument fails; his reliance was neither reasonable nor detrimental.

Because no genuine issue of material fact exists, and it is clear that BSI did not make a reporting error regarding the status of Pittman's loan, BSI is entitled to judgment as a matter of law on Pittman's FCRA claims.

**C.    Pittman's Breach of Contract Claim Fails**

Pittman claims BSI breached the mortgage agreement by failing to pay property taxes on his property in 2013 and 2014. BSI says Pittman's breach of contract claim fails as a matter of law because it is undisputed that he was the first to breach. The Court agrees.

Under Michigan law, a party "who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform." *Chrysler Int'l Corp. v. Cherokee Exp. Co.*, 134 F.3d 738, 742 (6th Cir. 1998) (citations and internal quotation marks omitted). Whether a breach is "substantial" is the determining factor. "The Michigan Supreme Court has explained that a 'substantial breach' is one 'where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered

8

ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party.'" *Id.* (citation omitted).

Here, Pittman breached the agreement first by failing to make monthly payments in August and September 2011. There can be no dispute that this constitutes a "substantial" breach, as it deprived BSI/iServe of the complete benefit of the bargain. It also prevented performance by BSI/iServe because a portion of each payment was placed in escrow to pay property taxes. Because no genuine issue of fact exists that Pittman committed the first substantial breach of contract, he cannot maintain an action against BSI for failure to perform. *See id.* BSI is entitled to judgment as a matter of law.

## III. CONCLUSION

BSI's motion for summary judgment [Doc. 100] is **GRANTED**; its motion *in limine* [Doc. 99] is **MOOT**; and this case is **DISMISSED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: May 19, 2017May 19, 2017

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 19, 2017May 19, 2017.
>
> s/Linda Vertriest
> Deputy Clerk

9